UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
——————————————————————x
ARIEL SATURNE,

                          Plaintiff,             No.

      -against-

                                          **COMPLAINT**

CERTIFIED LUXURY MOTORS d/b/a      Jury Demanded
CERTIFIED LUXURY MOTORS OF
VALLEY STREAM and d/b/a
CERTIFIED LUXURY MOTORS OF
GREAT NECK, JOVIA FINANCIAL CREDIT
UNION, and JOHN DOES 1-10,

                         Defendants.
——————————————————————x

## Introduction

1.    This is a suit brought by a consumer, Ariel Saturne, against an automobile dealership, Certified Luxury Motors ("CLM"), and its officers, employees, and agents, named herein as John Does 1-10, for using fraudulent misrepresentations to sell him a motor vehicle at an inflated price through a loan with Jovia Financial Credit Union ("Jovia") at an inflated interest rate. Plaintiff asserts claims against CLM, Jovia, and John Does 1-10 under the Truth-in-Lending Act ("TILA") and the Fair Credit Reporting Act ("FCRA"), and further asserts state-law claims for declaratory relief and for common-law fraud, and violations of New York General Business Law § 349 and 350.

-1-

## Parties

2.      Plaintiff is a resident of Queens, New York.

3.      Defendant CLM is a d/b/a of an unknown New York corporation with its principal place of business in Nassau County, New York.

4.      CLM does business under at least two other names: "Certified Luxury Motors of Valley Stream" and "Certified Luxury Motors of Great Neck."

5.      CLM has its principal place of business at 444 West Merrick Road, Valley Stream, NY 11580.

6.      Defendant Jovia is a federally chartered credit union with its principal place of business at 1000 Corporate Drive, Westbury, NY 11590.

7.      Defendant John Does 1-10 are officers, employees, or agents of CLM who were personally involved in or directed the fraudulent and unlawful acts against Plaintiff that took place at the Certified Luxury Motors of Valley Stream dealership.

8.      Defendant John Does 1-10 all work out of the Valley Stream or Great Neck CLM showrooms.

9.      The actions of John Does 1-10 described herein were undertaken both in their capacity as agents for Defendant CLM and in their individual capacity.

10.     Defendant CLM is a "user" as governed by the FCRA.

11.     Each of Defendant John Does 1-10 is a "user" as governed by the FCRA.

12.     Once Plaintiff has identified these individuals first and last names, Plaintiff will move to amend the Complaint to name them individually.

### Jurisdiction and Venue

13.     This court has federal question jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1640, 15 U.S.C. § 1681n, 15 U.S.C. 1681o, and 15 U.S.C. § 1691e.

14.     This Court has supplemental jurisdiction under 28 U.S.C § 1367(a).

15.     This court has jurisdiction over CLM because it is a resident of New York.

16.     This court has jurisdiction over John Does 1-10 because they are residents of New York or do business or transact business in the State of New York, more particularly, out of the CLM Valley Stream and Great Neck showrooms.

17.     This court has jurisdiction over Jovia because it is a resident of New York.

18.     Venue is proper in this district under 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

19.     Venue is also proper in this district because the defendants transact business in this district and the interests of justice require maintenance of this action in this district.

## Facts

20.     On or about June 12, 2020, Plaintiff visited CLM at its Valley Stream dealership with his brother-in-law.

21.     CLM sells cars and provides financing to consumers at large.

22.     Plaintiff had been searching for a new car on-line and identified one that he wanted to buy.

23.     The car – a 2016 Nissan Rogue SL – was listed on the cargurus.com website as retailing for $13,495 at CLM's Valley Stream dealership.

24.             CLM placed the advertisement with cargurus.com and authorized and approved the advertisement before, during, and after its placement on the cargurus.com website. The advertisement is attached hereto as Exhibit A.

25.      Plaintiff was unaware that this was the start of a bait-and-switch scam planned and committed by CLM and John Does 1-10.

26.     Before visiting the dealership, Plaintiff received pre-approval for a car loan from Jovia.

27.     Under the terms of the pre-approval, Plaintiff could receive a loan of up to $25,000 at a rate of 3.19% in order to purchase a motor vehicle.

-4-

28.     When Plaintiff visited CLM, a salesman by the name of something similar to Venson, whose last name is unknown to Plaintiff, told Plaintiff that the price would be much higher than the amount on-line because it did not take into account a number of additional expenses like a fee for certification of the car and a warranty for the engine and transmission.

29.     Venson is John Doe #1.

30.     Although Plaintiff was surprised at the additional expenses, he made an offer of $17,500 for the car, including any expenses and warranty for the engine and transmission.

31.     After agreeing on the price, Plaintiff met with John Doe #2, CLM's sales manager, to discuss financing for the car.

32.     Initially, before Plaintiff could explain that he had pre-approval from Jovia, John Doe #2 tried to steer Plaintiff toward a loan with a different credit union with a 4.88% interest rate.

33.     Plaintiff later learned that this proposed loan was the result of an unlawful and impermissible credit-pull by CLM and John Does 1-10 of Plaintiff's consumer reports from Trans Union, Experian, and possibly Equifax.

34.     Despite the fact that Plaintiff had been pre-approved by Jovia, CLM and John Does 1-10 pulled Plaintiff's Trans Union and Experian consumer reports

and possibly Plaintiff's Equifax report without Plaintiff's permission and without a permissible purpose.

35.     Despite the fact that Plaintiff had been pre-approved by Jovia, CLM and John Does 1-10 submitted an application on Plaintiff's behalf to Teachers Federal Credit Union and to Ally Financial, thereby causing them to pull Plaintiff's consumer reports without Plaintiff's permission and without a permissible purpose.

36.     Again, Plaintiff was pre-approved and never gave CLM or John Does 1-10 permission to pull his consumer reports or to apply for credit on his behalf with Teachers Financial Credit Union, Ally Financial, or any other creditor.

37.     When Plaintiff provided documentation showing his pre-approval from Jovia, John Doe #2 told Plaintiff that Jovia would no longer provide a 3.19% interest rate but would issue a loan at a 3.79% interest rate.

38.     John Doe #2 did not explain why Jovia would no longer honor the interest rate contained in Plaintiff's pre-approval.

39.     On information and belief, Jovia had not rescinded the 3.19% rate and John Doe #2 lied to and misled Plaintiff by claiming that Jovia would only offer a higher interest rate as a way of bumping up CLM's profit on the sale.

40.     CLM makes more money if it facilitates financing with a higher interest rate.

41.     With the cost of financing and additional fees and taxes, John Doe #2 told Plaintiff that the total cost of the car was $21,273.74.

42.     Plaintiff only realized later that some of those additional fees and taxes should have been incorporated into the all-in $17,500 price to which the parties had previously agreed.

43.     CLM effectively charged Plaintiff twice for the same fees and taxes.

44.     Not realizing this at the time, Plaintiff agreed to the $21,273.74 purchase.

45.     Plaintiff made a $3,000 down payment and agreed to finance the remainder of the purchase price with Jovia at the 3.79% interest rate, which John Doe #2 said was the lowest rate available.

46.     John Doe #2 provided Plaintiff with two copies of a retail installment sales contract to sign.

47.     The first copy reflected the total sale price of $21,273.74 and Plaintiff's $3,000 down payment.

48.     John Doe #2 explained that under this contract, $18,273.74 would be financed and the total of payments on the loan, including interest, would be $20,273.74.

49.     John Doe #2 told Plaintiff that the total of payments would be lower if Plaintiff paid off the loan in fewer than 72 payments.

50.    The second copy of the retail installment contract was blank.

51.    John Doe #2 explained to Plaintiff that he should sign the blank contract because occasionally banks would reject a contract for minor technical reasons like the spacing of the writing or the printout not lining up properly on the page, and the blank contract would allow them to fix such problems without having Plaintiff come back into the dealership.

52.    Plaintiff signed the loan documents but the car dealer did not provide him with a copy of either contract.

53.    John Doe #2 told Plaintiff that he could not receive a copy of the contract because it had not yet been reviewed by his manager.

54.    John Doe #2 told Plaintiff to return the next week to pick up a copy of the contract and other paperwork for the car.

55.    One week later, on or about June 18, 2020, Plaintiff returned to CLM's Valley Stream dealership, and was told that the paperwork was not ready for him to pick up yet.

56.    John Doe #2 told Plaintiff that CLM would call him when the paperwork was ready.

57.    A week later, on or about June 25, 2020, Plaintiff called CLM to follow-up on the paperwork and was told that it was now ready to pick up.

-8-

58.     When Plaintiff picked up the paperwork that day he noticed that the retail instalment contract was different from the one he had signed two weeks earlier.

59.     Instead of showing $18,273.74 in financing, total payments of $20,273.74, and a total sale price of $23,273.34 (including the $3,000 down payment), the contract showed $20,273.74 in financing, total payments of $22,734, and a total sale price of $25,734 (also including the $3,000 down payment).

60.     CLM had added more than $2,000 to the purchase price without Plaintiff's knowledge or consent.

61.     The contract still showed Plaintiff as making a $3,000 deposit.

62.     A copy of the contract is attached hereto as Exhibit B.

63.     According to that contract, Plaintiff was paying a total sale price of $25,734 for a car that had been listed on-line for almost half that amount.

64.     On information and belief, CLM used the blank copy of the contract that Plaintiff signed in order to alter the purchase price of the motor vehicle.

65.     Plaintiff contacted Jovia after he received the altered contract.

66.     Jovia told him that it only had a record of his loan pre-approval; it had no record of the loan itself being approved.

67.     By letter dated July 9, 2020, Jovia confirmed that it was disbursing a loan for the purchase of the motor vehicle.

68.    Jovia accepted the assignment of the loan documents from CLM.

69.    CLM did not use Plaintiff's preapproval and instead, initiated their own financing transaction, which CLM assigned to Jovia.

70.    Under the contract, the Uniform Commercial Code, and the "FTC abolition of the holder-in-due-course rule" that was a part of the loan contract, Jovia financed the transaction subject to all claims and defenses that Plaintiff had related to the underlying transaction, and was liable for all of the plaintiff's claims against CLM, up to the amounts paid and owed in the transaction.

71.    There are discrepancies between Jovia's records of the loan and even the altered retail installment contract. A copy of Jovia's records, with personal identifying information redacted, is attached hereto as Exhibit C.

72.    Jovia records state that Plaintiff made only a $2,000 down payment for the car, not the $3,000 down payment that he actually made and that is reflected on the altered contract.

73.    Jovia records also show that it disbursed a loan in the amount of $20,372. This is both more than the $18,273.74 that Plaintiff agreed to on June 12, 2020, and also slightly more than the $20,273.74 listed on the altered contract.

74.    Plaintiff is being billed for a loan amount greater than what he agreed to when he signed the contract on June 12, 2020.

75.    Plaintiff has been paying the higher amount, so as to mitigate his damages by preventing damage to his credit and a possible repossession.

## Count I
## Truth in Lending Act Violations by CLM and Jovia

76.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

77.    CLM is a creditor as defined by TILA, 15 U.S.C. § 1601, *et seq.*

78.    Jovia is a creditor as defined by TILA, 15 U.S.C. § 1601, *et seq.*

79.    Plaintiff is a consumer as defined by TILA, 15 U.S.C. § 1601, *et seq.*

80.    CLM failed to provide the disclosures required under TILA, 15 U.S.C. § 1601, *et seq.*

81.    CLM violated TILA in one or more of the following ways, by example only, and without limitation:

  (A)    By failing to accurately state the legal obligation between the parties at the time of disclosure;

  (B)    By failing to accurately provide the finance charge, the total of payments, the total sales price, or the timing, of payments;

  (C)    By failing to accurately reflect the down payment and credits;

  (D)    By lying about and misrepresenting the APR available from Jovia to turn an unlawful profit;

-11-

(E) By having Plaintiff sign two contracts—one in blank and one filled out—and by falsely completing and submitting the blank contract to Jovia;

(F) By failing to provide Plaintiff with a copy of either contract before the consummation of the contract and by forcing him to hound CLM and the John Does to obtain a copy of the falsely and fraudulently completed contract; and

(G) By inaccurately stating the APR and the total finance charge.

82. As a result of the above, CLM has not provided accurate and complete disclosures as required by the Truth in Lending Act.

83. In connection with the financing referenced above, CLM failed to provide a copy of the finance terms prior to the consummation of the sale or the loan.

84. As a result of the above, CLM has breached the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and is liable to Plaintiff for actual and statutory damages under the Act.

85. Either through reformation or monetary damages, Plaintiff should be restored to the position he should have been in when he responded to the false bait-and-switch advertisement of $13,495, with his pre-approved interest-rate from Jovia of 3.19%.

86. Jovia is liable for CLM's violations of TILA under the FTC Holder Rule and the terms of the contract.

## Count II
### Fair Credit Reporting Act Violations by CLM and Jovia

87.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

88.     CLM's refusal to extend credit in accordance with the first, completed loan agreement was an "adverse action" within the meaning of the FCRA, 15 U.S.C. § 1681a(k).

89.     CLM failed to provide the notice of adverse action required by the FCRA, 5 U.S.C. § 1681m.

90.     For its willful violation of the FCRA, CLM is liable to Plaintiff for her actual damages or statutory damages of between $100 to $1,000, punitive damages, and reasonable attorney fees under 15 U.S.C. § 1681n.

91.     In the event that the FCRA violation is determined to be negligent rather than willful, CLM is liable to Plaintiff for her actual damages and reasonable attorney fees under 15 U.S.C. § 1681o.

92.     Under § 1681b(f), a person, including a corporation, may not use or obtain a consumer report for unauthorized purposes.

93.     Defendants CLM and John Does 1-10 each violated 15 U.S.C. §1681b(f) by obtaining and using the Plaintiff's consumer reports without a permissible

purpose to do so, and by inducing Teachers Financial Credit Union and Ally Financial to do so at the behest of CLM and John Does 1-10.

94.    Defendants CLM and John Does 1-10 each violated 15 U.S.C. §1681b(f) by failing to accurately and lawfully certify a permissible purpose to consumer reporting agencies.

95.    As a result of Defendants CLM and John Does 1-10's conduct, Plaintiff suffered actual damages including, without limitation, credit damage related to each impermissible pull, violation of privacy, and other emotional and mental distress.

96.    Defendants CLM and John Does 1-10 knew or should have known that there was no permissible purpose to obtain Plaintiff's credit report.

97.    Defendants CLM and John Does 1-10 knew that Plaintiff was already pre-approved by Jovia for the purchase of the vehicle at 3.19%, and that the credit pulls on June 12, 2020 by Defendants—and by Teachers Federal Credit Union and by Ally Financial at Defendants' behest—were without any permissible purpose.

98.     For its willful violation of the FCRA, Defendants CLM and John Does 1-10 are liable to Plaintiff for punitive damages in the amount to be determined by the Court under 15 U.S.C. §1681n.

99.    In the alternative, Defendants CLM and John Does 1-10 were negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

100.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney fees from Defendants CLM and John Does 1-10 in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

101.    Jovia is liable for CLM's violations of the FCRA under the FTC Holder Rule and the terms of the contract.

### Count III
### Equal Credit Opportunity Act Violations by CLM and Jovia

102.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

103.    CLM's refusal to extend credit in accordance with the first, completed installment sales contract was an "adverse action" within the meaning of ECOA, 15 U.S.C. § 1691(d).

104.    CLM failed to provide the notice of adverse action required by ECOA, 15 U.S.C. § 1691(d)(2).

105.    For its violations of ECOA, CLM is liable to Plaintiff for actual damages, punitive damages of up to $10,000, and reasonable attorney fees under 15 U.S.C. § 1691e.

106.    Jovia is liable for CLM's violations of ECOA under the FTC Holder Rule and the terms of the contract.

## Count IV
## Declaratory Relief against CLM and Jovia

107.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

108.    Plaintiff is entitled to a court order declaring that the blank, fraudulent loan agreement between Plaintiff, CLM, and Jovia is null and void, requiring Jovia to release Plaintiff from any obligations under that agreement.

109.    Either through reformation or monetary damages, Plaintiff should be restored to the position he should have been in when he responded to the false bait-and-switch advertisement of $13,495, with his pre-approved interest-rate from Jovia of 3.19%.

## Count V
## Common Law Fraud Violations against CLM, Jovia, and John Does 1-10

110.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

111.    CLM's agents intentionally, recklessly and/or negligently made misrepresentations to Plaintiff regarding the price of the car, and the amount Plaintiff would be financing to purchase the car.

112.   CLM then, without Plaintiff's knowledge, created loan documents containing different terms from those agreed upon.

113.   Without CLM's false representations, Plaintiff would not have purchased the vehicle.

114.   Plaintiff has been actually damaged by CLM's false representations by being stuck with a loan that she did not agree to.

115.   Plaintiff relied on the CLM's misrepresentations and was induced to purchase the aforementioned automobile.

116.   CLM's actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

117.   Moreover, either through reformation or monetary damages, Plaintiff should be restored to the position he should have been in when he responded to the false bait-and-switch advertisement of $13,495, with his pre-approved interest-rate from Jovia of 3.19%.

118.   Jovia is liable for CLM's violations of state law under the FTC Holder Rule and the terms of the contract.

### Count VI
### Violations of New York General Business Law §§ 349 and 350 by CLM and Jovia

119.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

120.    Under New York General Business Law ("GBL") § 349, deceptive acts or practices in the conduct of any business conducted in the State of New York are unlawful.

121.    Under GBL § 350, "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

122.    Under GBL § 350-e(3),

> Any person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars, if the court finds that the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

123.    CLM's actions in inducing a consumer to purchase a car through bait-and-switch at a price far in excess of the advertised price of $13,495, and then preparing a completed and a blank set of loan documents for the consumer to sign

-18-

and lying about the terms that Jovia would accept and the amount of Plaintiff's down-payment, all violated GBL § 349 by falsely and deceptively forcing loans on consumers without consent and constituted false advertising, relied upon by Plaintiff, within the meaning of GBL § 350.

124. CLM has caused Plaintiff to suffer actual economic injury in the form of a loan to which he did not agree and upon which he has made payments.

125. By and through its acts, omissions, concealments, and misrepresentations, CLM violated GBL § 349 with materially misleading and consumer-oriented deceptive acts and practices, with a broad impact on consumers at large, and have done so knowingly or willfully, and such actions constituted false advertising, upon which Plaintiff relied, within the meaning of GBL § 350.

126. As a direct and proximate result of CLM's deceptive acts and practices and false advertising, committed in violation of GBL § 349 and § 350, Plaintiff was also damaged in that he, among other things, suffered fear, stress, anxiety and difficulty sleeping, and suffered monetary damages as set forth above.

127. Plaintiff claims all damages to which she is entitled arising from Defendants' violations of GBL § 349 and 350.

128. Jovia is liable for CLM's violations of GBL §§ 349 and 350 under the FTC Holder Rule and the terms of the contract.

## Prayer for Relief

**WHEREFORE**, plaintiff respectfully requests that this Court enter a Judgment:

1.  Declaring that Defendants' conduct complained of herein violates Plaintiff's rights under the TILA, FCRA, EOCA, and state law;

2.  Declaring that the second loan agreement is null and void;

3.  Either through reformation or monetary damages, Plaintiff should be restored to the position he should have been in when he responded to the false bait-and-switch advertisement of $13,495, with his pre-approved interest-rate from Jovia of 3.19%;

4.  Enjoining Defendants from reporting to credit agencies that Plaintiff failed to honor the terms of any loan agreement;

5.  Directing Defendants to pay Plaintiff actual damages in an amount to be determined by a jury;

6.  Directing Defendants to pay Plaintiff statutory damages as provided under the TILA, 15 U.S.C. § 1640, and FCRA, 15 U.S.C. § 1681, *et seq.*;

7.  Directing Defendants to pay Plaintiff civil penalties as provided under New York General Business Law §§ 349 and 350;

8.  Directing Defendants to pay Plaintiff punitive damages in an amount to be determined by a jury;

-20-

9.     Awarding Plaintiff reasonable attorney fees, costs and disbursements of this

action;

10.    Granting such other and further relief as this Court deems just and proper.

### Jury Demand

Under Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a

trial by jury in this action.

Dated:       New York, New York
             June 11, 2021

                                          Respectfully submitted,
                                          Bromberg Law Office, P.C.

                                          By: /s/ *Brian L. Bromberg*
                                                Brian L. Bromberg
                                                One of Plaintiffs' Attorneys

<u>Attorneys for Plaintiffs:</u>
Brian L. Bromberg
Joshua Tarrant-Windt
Bromberg Law Office, P.C.
352 Rutland Road #1
Brooklyn, NY 11225
Tel: (212) 248-7906